## UNITED STATES, to Use of STEACY-SCHMIDT MFG. CO., Inc., v. GLOBE INDEMNITY CO.

### No. 5025.

Circuit Court of Appeals, Third Circuit.

July 10, 1933.

WOOLLEY, Circuit Judge, dissenting.

Russell C. Gourley and Samuel W. Cooper, both of Philadelphia, Pa., for appellant.

Frederic L. Ballard, Morris Cheston, and Ballard, Spahr, Andrews & Ingersoll, all of Philadelphia, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and THOMPSON, Circuit Judges.

THOMPSON, Circuit Judge.

This is an appeal from a judgment of the District Court for the Eastern District of Pennsylvania. The Sanitation Corporation entered into a contract with the United States to furnish the latter with two needle valves required by the Department of the Interior for a public irrigation project. In accordance with the provisions of the Hurd Act (40 USCA § 270), the Sanitation Corporation, as principal, and the Globe Indemnity Corporation, as surety, executed a bond with the condition that the Sanitation Corporation pay promptly all persons supplying it with labor and materials. The Steacy-Schmidt Manufacturing Company, Inc., supplied the valves and all labor and materials necessary in the prosecution and completion of the Sanitation Corporation's contract with the United States. An involuntary petition in bankruptcy was filed against the Sanitation Corporation. The greater part of the sum due the Steacy-Schmidt Manufacturing Company, Inc., was still unpaid. On October 17, 1928, the Steacy-Schmidt Manufacturing Company, Inc., brought suit on the bond to its own use, in the name of the United States as legal plaintiff. Jury trial was waived by written stipulation, and the case heard by the District Judge. This appeal is from the judgment in favor of one of the defendants, the Globe Indemnity Company.

The Hurd Act limits the subcontractor's right of action to one year. It provides: "Any person or persons entering into a formal contract with the United States for * * * the prosecution and completion of any public work * * * shall be required, before commencing such work, to execute the usual penal bond, with good and sufficient sureties, with the additional obligation that such contractor or contractors shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract. * * * If no suit should be brought by the United States within six months from the completion and final settlement of said contract, then the person or persons supplying the contractor with labor and materials shall * * * be furnished with a certified copy of said contract and bond, upon which he or they shall have a right of action, and shall be, and are hereby, authorized to bring suit in the name of the United States in the district court of the United States in the district in which said contract was to be performed and executed, irrespective of the amount in controversy in such suit, and not elsewhere, for his or their use and benefit, against said contractor and his sureties, and to prosecute the same to final judgment and execution: Provided, That where suit is instituted by any of such creditors on the bond of the contractor it shall not be commenced until after the complete performance of said contract and final settlement thereof, and shall be commenced within one year after the performance and final settlement of said contract, and not later. * * *"

The plaintiff contends that final settlement did not take place until October 26,

1927, and that its right of action did not expire until October 26, 1928. The defendant contends that the date of final settlement was June 16, 1927, and that the right of action of the subcontractor expired June 16, 1928. It therefore is essential to determine the date of final settlement.

In Illinois Surety Co. v. U. S., Use of Peeler, 240 U. S. 214, 36 S. Ct. 321, 60 L. Ed. 609, the Supreme Court held that final settlement, within the meaning of the act, does not depend upon final payment, but upon the final administrative determination by the proper authority of the amount due. In the instant case the defendant assumes that the Department of the Interior was the proper authority to make final settlement. It relies upon a letter dated June 16, 1927, written by the First Assistant Secretary of the Department of the Interior to the Claims Division, General Accounting Office, as proof that final settlement occurred on that day. The letter begins: "I am enclosing herewith for direct settlement the claim of the Sanitation Corporation," and concludes: "The claim has received administrative examination, is approved for $8,899.30 and I recommend that the amount found due be paid from the Reclamation Fund 4 x 502." Correspondence relative to the claim was inclosed for the consideration of the General Accounting Office which issued its certificate of settlement signed by the Comptroller General. The certificate read: "I certify that I have examined and settled the claim of the Sanitation Corporation * * * and find that the sum of eight thousand eight hundred ninety-nine dollars is due from the United States to said claimant, payable from the appropriation 4 x 502. * * * In view of the foregoing * * * it must be concluded that the claimant company is liable to the United States for liquidated damages for 163 calendar days delay at $25.00 per day. Issue warrant and send same as above." The Comptroller General, in making his finding, relied upon the correspondence submitted by the Department of the Interior.

It may be conceded that, prior to the enactment of the Budget and Accounting Act of 1921, the Department of the Interior was the appropriate administrative branch to make final settlement for work done for that Department. The Budget and Accounting Act, however, unquestionably empowers the General Accounting Office to make all settlements on behalf of the government. The pertinent sections read:

"All powers and duties which on June 30, 1921, were conferred or imposed by law upon the Comptroller of the Treasury or the six auditors of the Treasury Department * * * shall * * * be vested in and imposed upon the General Accounting Office and be exercised without direction from any other officer. The balances certified by the Comptroller General shall be final and conclusive upon the executive branch of the Government. * * *" 31 USCA § 44.

"All claims and demands whatever by the Government of the United States or against it * * * shall be settled and adjusted in the General Accounting Office." 31 USCA § 71.

"Nothing in this chapter shall prevent the General Accounting Office from suspending items in an account in order to obtain further evidence or explanations necessary to their settlement. The Secretary of the Treasury shall make regulations fixing the time which shall expire before a warrant is issued in payment of an account certified as provided in this section and section 72 of this title. * * *

"Disbursing officers, or the head of any executive department, * * * may apply for and the General Accounting Office shall render his decision upon any question involving a payment to be made by them or under them, which decision, when rendered, shall govern said office in passing upon the account containing said disbursement." 31 USCA § 74.

■ This act empowers the General Accounting Office to make all settlements and to render decisions upon any question involving a payment to be made by disbursing officers or by the head of any executive department. It provides that the balances certified by the Comptroller General shall be final and conclusive. The decision in Lambert Lumber Co. v. Jones Engineering & Construction Co., Inc. (C. C. A.) 47 F.(2d) 74, certiorari denied, 283 U. S. 842, 51 S. Ct. 489, 75 L. Ed. 1452, sustains the view that the General Accounting Office is authorized to settle claims.

■ We are of the opinion that the General Accounting Office in the instant case was charged with the duty of making final settlement and performed that duty, as evidenced by its certificate of settlement issued in October, 1927. The plaintiff's suit, therefore, was brought within the one year allowed by the Hurd Act.

The judgment of the court below is reversed, and the cause remanded for further proceedings in accordance with this opinion.

WOOLLEY, Circuit Judge (dissenting).

It should be noted that in the Lambert Lumber Company Case the department charged with the work did not make an administrative determination of the claim but passed it on to the General Accounting Office which, doubtless, in that situation, had authority finally to act upon the matter. Distinguishing the dicta from the decision in the Lambert Case and adhering to the law of the Peeler Case, I believe the Budget and Accounting Act of 1921 did not repeal or change the provisions of the Hurd Act requiring an appropriate administrative determination of a claim before suit. I would find in this case that the Department of the Interior, having been charged with the work, made such a determination or settlement, and the action of the General Accounting Office was not a settlement of the contractor's claim but was merely an accounting transaction whereby the Office, before directing payment, went over, examined, checked and audited the settlement previously made by the Department; that in this case the settlement so made by the Department was the one contemplated by the Hurd Act and that, in consequence, the plaintiff-contractor brought his suit too late.